Good afternoon, Your Honors. May it please the Court, my name is Sarah Nelson and I represent Alicia Naranjo Garcia in this matter. I would like to reserve two minutes for rebuttal. This Court should reject the BIA and IJ's decisions and allow Alicia to pursue relief for three reasons. First, Alicia was persecuted on account of two protected grounds, family membership and property ownership. Second, the BIA applied the wrong legal standard to Alicia's withholding of removal claim. And third, the agency did not properly consider the state and local government's acquiescence to the cartel when analyzing Alicia's CAT claim. Regarding Alicia's asylum claim, it's important to note that the IJ deemed Alicia's testimony credible. That means that this Court should review the facts that Alicia presented as unrebutted facts, undisputed facts, excuse me, before this Court. As this Court held in Singh v. Ilchert, when the record contains undisputed facts, this Court should apply legal principles to a record of undisputed facts and should find here that Alicia was persecuted on account of two protected grounds, family membership and property ownership. Here, Alicia was threatened by the cartel after the cartel murdered her husband. Her son was tried, be recruited into its ranks, and Alicia was forced from her home after the cartel threatened her life for a second time. All of these facts show that Alicia was persecuted on account of two protected grounds. Although the BIA and the IJ rejected the finding that Alicia suffered past persecution and testified credibly, they rejected these grounds improperly. Ms. Nelson, given that the judge found them to be credible, what is the proper standard for review now after Singh, and has that been superseded in any way? Your Honor, you're correct. There has been further precedent after Singh that the question of nexus could be reviewed under a substantial evidence standard from this circuit. However, Singh was the first case to determine that the nexus question should be reviewed under de novo review. And as this court reaffirmed in 2013 in Bagasarian v. Holder, the standard review for question is still a bit up in the air in this circuit. But as Singh set forth first, the correct review here should be de novo, as it is a legal question. Here, the court is asking whether Alicia was persecuted on account of a protected ground. You are asking that question to a set of undisputed facts because Alicia was deemed credible by both the IJ and the BIA. When reviewing this claim de novo, this court should find that Alicia was persecuted on account of these two protected grounds. And because of that, the BIA and IJ improperly analyzed Alicia's withholding of removal claim. The withholding of removal claim analysis done by the BIA was summarily dismissed, stating that because Alicia could not satisfy the nexus element of her asylum claim, she necessarily could not satisfy the more stringent standard for the withholding of removal claim, which is the incorrect law. As this court stated in Barajas-Romero, the proper nexus element to consider in a withholding of removal claim is the lower A reason standard. That is, whether Alicia's family membership and property ownership was a reason for her persecution by the cartel. That is not the question that the BIA nor the IJ asked here, and they did not apply the law properly for this question. Ms. Nelson, what if the higher standard of a central reason is applied? Can your client still prevail? Yes, Your Honor. Our client can still prevail, as we argued under our asylum argument for Alicia. Alicia was persecuted on account of family membership and property ownership. And as this court stated in Parousi-Mova, the one central reason standard considers whether the asylum applicant was persecuted for one central reason for a protected ground, meaning was the one central reason not tangential or incidental to the motive for the persecutor's intent in targeting the asylum applicant. Here, Alicia was targeted after her husband was murdered for speaking out against the cartel's murder. She was threatened at her family home after she helped her son escape its recruitment, and her home was taken from her after she helped her son do this. This shows that her family ties were intrinsic to the cartel's threats against Alicia. Without the cartel's, excuse me, without Alicia's ties to her husband and to her son, the cartel would not have targeted Alicia several times and threatened to take her life. For that, I fear not. I was going to ask, because I actually thought your stronger nexus argument was the land ownership one, not the family one. So I'm interested in the answer you just gave that focused on the family. It seemed like the BIA actually gave more reasons that seemed tied to the land ownership, even though it then concluded the opposite of what you think it should have. Yes, Your Honor. The BIA did find here that Alicia was targeted for her property, but neglected to apply the protected ground of property ownership that this court has recognized can serve in that case. Here, where Alicia's husband was murdered over a property dispute, and Alicia's home was taken from her and she was threatened at her family home, the property ownership is also one central reason for Alicia's persecution. This court has held that there can be multiple central reasons for one's persecution. While the government seems to contend differently, Alicia does not need to show that a protected ground was the only reason for Alicia's persecution. She just needs to show that it was one central reason in order to be eligible for asylum. It needs to show that it was a reason for her persecution in order to be eligible for withholding of removal. Could I ask you about the CAT claim? It sounded like in your introduction you were going to focus on government acquiescence, but I wasn't sure that the BIA had actually denied the claim on government acquiescence rather than just denying it on probability of torture overall, regardless of acquiescence. Your Honor, the BIA denied her claims, it seems, on both grounds here, finding that Alicia had not demonstrated the requisite likelihood of future torture, nor that the government would acquiesce to such torture. However, as we stated in our opening brief, Alicia can test these findings, arguing that because she testified to her husband's murder and to her multiple threats, that she has shown a likelihood of future torture, and that the government would acquiesce to this torture by the cartel. The acquiescence standard here that Alicia must show is that a public official was willfully blind to the cartel's torture, and here Alicia presented state and local government evidence of collusion and multiple years of working with and protecting the cartels. Your Honors, I see that my time is coming to a close, but if you have one more question, I'm happy to answer. I see that you're about to do that. I was just about to ask about the period of 2012 to 2017, and how we should think about that in terms of the likelihood of torture, given that it seems like she wasn't bothered during that time. Your Honor, during that time, Alicia testified in the record that she spent the majority of that time in hiding, only leaving her home to go to doctor's visits. And as this Court recently held, it is not reasonable to expect one to live in hiding. That is not the standard quality of life that this Court should be looking for in terms of reasonableness. Thank you. Ms. Strokis. Good afternoon, Your Honors, and may it please the Court. My name is Jessica Strokis, and I represent the United States Attorney General. In response to Petitioner's arguments, first I'd like to say it is clear from this Court's case law that the nexus standard, the nexus inquiry, is governed by the substantial evidence standard. Motive is the disputed fact in this case. And frankly, Bagdasarian's statements to the contrary, Verdicta and Petitioner herself conceded that Singh is no longer good case law in this circuit for purposes of what standard review this Court uses for the nexus inquiry. So substantial evidence truly is the standard here, and that essentially means that this Court reviews the agency's decision to determine whether or not the record compels an opposite conclusion. It does not mean that this Court reviews the determination and decides in the first instance what it believes that the evidence shows. This Court's role is simply to say whether or not there is substantial evidence in the record supporting the agency's determination. And I would point this Court to Judge Van Dyke's concurrence in the recent case of Velazquez-Gaspar v. Barr for a more in-depth discussion of the substantial evidence standard in this Court's review. Second, in discussing nexus itself, Elias Zacharias, the Supreme Court mandated that motive is critical. Even Harisimova recognizes this. Motive is critical. And that is what the agency's determination really boils down to in this case. The agency was targeted because the cartel wanted to obtain her properties. Why is that not a statement of motive? Your Honor, I believe the portion of the Board's decision that you're referencing is reiterating what the immigration judge said, which was essentially that this case boils down to the criminal motives of the gang, that the gang was motivated not by some animus against a group of property owners, but rather to get the property itself. It wasn't motivated by her family as a group, but again, because of its criminal scheme, it was motivated to obtain the property, like in Zatino v. Holder, where this Court said there was no nexus at all to any protected grounds, notwithstanding that the petitioner there did argue family and did argue property ownership as protected grounds. This Court said there was no nexus, even where the, I believe it was the grandfather in that case, had been murdered by the gang because the gang wanted to obtain the property itself. This Court drew that distinction in that case, that it was not an animus against a group of property owners, and there was no animus against the family. It was simply the gang wishing to expand its criminal enterprise by obtaining property in that case, and certainly in this case, unfortunately, by recruiting Ms. Garcia's son. And while these are unfortunate and certainly sympathetic facts, the legal standard here requires that Ms. Garcia show that the motivation of the gang was that it had some awareness and care of her belonging to a protected ground, of having a protected characteristic. It seems like those arguments might go better to the idea that land ownership or property ownership shouldn't be a cognizable social group, but that isn't the ground the agency said it was resting on. So, I mean, I can understand the argument that when someone's targeted for property, it's not really because of a group, but doesn't that go more to whether the group is a valid group? It certainly could, Your Honor, but however, Elias Zacharias does put basic motive as the kind of cornerstone of the nexus inquiry. You have basic motive, and then you have causation. And then this court, I mean, following Elias Zacharias for many years, has come down on that idea, and Zatino v. Holder is a great example of that because the question was, was this nexus question? And it wasn't, is our property owners a particular social group? It was, what is the motivation of the gang in its actions? So if a gang is going after someone because they want their property, how do we ever tell the difference between that and going after the person because they own the property? Your Honor, just looking at this case, the, well, first I would say that going back to this court standard of review, I just have to point out that it's the board's determination, right? So the board looks at the contradictory evidence and makes that judgment call. Did the petitioner satisfy her burden? And in that line drawing. But if the line drawing just doesn't make sense, I mean, if it's impossible to draw that line, then what the board said makes no sense. I mean, maybe it could have said this isn't a good group, but they didn't say that, and instead they drew a line that I don't know that we have to just completely blind ourselves to whether the line makes sense ever. Certainly, Judge Friedland. And I would point to Judge Van Dyke's concurrence in Vasquez-Gaspar v. Barr, where he recognizes deference does not mean blindness, certainly, but deference does mean deference. And in this case, the board made, the board and the immigration judge made the determination that the motivation of the gang was not that she was a member of a group of property owners and that she wasn't that she was a member of her family, but rather that she had a piece of property that the gang wanted. Let me ask you a question on that issue because the BIA and the IJ both held that the cartel wanted to obtain family property, one, which seems like two, found an excuse by her son's defiance of the recruitment over him to also get rid of Garcia and displace her from her property. So it seems like we're talking about one if it's just a distinctive piece of property, but here the BIA said it was both. It was the interrelationship between the son's defiance and that property. Doesn't that go against what you're saying here? No, Your Honor, because I think that's illustrative that the gang was seeking to further its criminal enterprise. It was seeking people and it was seeking land. Its motivation wasn't an animus against her family and it wasn't an animus against a group of property owners. And I think that's what the board and the agency has done here. It's divorced property ownership, a group of property owners, from the property itself. That's what the court did in the Keno v. Holder. It divorced the fact that the family owned property and were property owners from the fact that the gang wanted the property itself because of the gang's motivation for its own criminal enterprise. But isn't there a play association? I mean, the BIA said found an excuse by her son's defiance over the recruitment of him. Isn't that the family association? And can it be just one of those two has to be the central reason? Certainly, Your Honor, but under the nexus inquiry set up by the Supreme Court and Elias Zacharias, again, basic motive has to be considered. And what Your Honor is suggesting, it sounds to me, is that but for having a son and a husband or but for owning this property, the gang would not have targeted her. But that's not what was shown in this case. And further, the strictly but for test is not the law of the circuit. I'm only aware of one circuit in which that might be the law, and that's the Fourth Circuit. But this court has repeatedly stated all of the problems that come along with a strict but for causation inquiry. You have the overdetermined results problem, which essentially means that any cause can't be cannot be the cause or a cause. You have the infinite regression problem, which meet which essentially stripped of the motive requirement, leads to the same kind of infinite regression recognized in court law. For example, the Paul's draft case. OK, counsel, counsel, if I could interject for just a moment. Let me try to get you back to a slightly simpler inquiry. But one that would help me if the gang is trying to go after her in order to get a particular piece of property that she holds. And why would that not be considered to be conduct that is got a nexus to the property ownership? Your Honor. I guess my answer to that would be twofold. First, the fact that she's going that the gang is going after a piece of property, that's that goes to causation. That doesn't go to motive. The motive of the gang, as found by the excuse me, I'm going over time. The motive of the gang, as as found by the board and immigration judge in this case, was not that they that the gang had some animus against property owners. It was simply that the gang wished to further its criminal enterprise. And I've I've I've already gone over my time, so I'll I'll just I'll conclude there. Your Honor, the government believes that the court should deny petition for review. Thank you. Thank you. You know, Miss Nelson. Give a little more time. Thank you. I would like to make three points on rebuttal. One, I did not concede that saying is no longer good law. I merely acknowledge the fact that subsequent panels of this circuit have held differently. But Bogdasarian v. Holder's panel also acknowledged that de novo review is the proper review for a nexus question. We urge this court to reconsider that question again today to apply, excuse me, to find that Alicia's testimony was credible and thus established legal principles to undisputed facts or what needs to happen here. Second, Alicia testified that the cartel has a practice of taking property from people in the community and specifically testified that there is a pattern of taking property from her family. This shows that the motivation for the cartel's persecution was Alicia's family and her family's property, demonstrating one central reason for her persecution. Even if the government is correct that the cartel's motivation was in part from a criminal motivation or a reason to enlarge its criminal properties, this family membership and family property ownership are still central reasons for Alicia's persecution. Third, Judge Freeland highlighted a central point that I would like to make. The IJ and the BIA never said that property ownership is not a cognizable social group, and this circuit has repeatedly held otherwise. We urge this court to allow Alicia to pursue relief for asylum, withholding of removal, and withholding of removal against the Convention Against Torture. Thank you. Thank you. I want to compliment both Ms. Nelson and Ms. Strokis for making fine arguments that are a big help to the panel. We also appreciate your doing it under these extraordinarily trying times and doing it remotely. So the panel gives its thanks. If there are no further questions from my colleagues. Judge Gould, can I ask Ms. Nelson a question? Sure. Are you a student at the University of Georgia? I am a student at the University of Georgia. Well, that may be the best student argument we've ever heard. Thank you, Ms. Nelson. Thank you so much. Thank you. I really appreciate that. Well, I thought Judge Boo was going to get into a football story about Georgia. I thought so, too. I wasn't sure where it was going. I was a little upset that they called the Georgia-Mizzou football game, for which I had tickets. I know. This whole football season has been a disappointment, I would say. Well, let's be optimistic and hope for better argument times, better football times. Yes. Great, thanks. Thank you both. This case shall be submitted and the parties will hear from us in due course.
judges: Gould, Friedland, Bough